**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| **DAVID YURMAN ENTERPRISES LLC AND DAVID YURMAN IP LLC,** | |
| *Plaintiffs*, | |
| **v.** | **CIVIL ACTION NO.** <br> **JURY TRIAL DEMANDED** |
| **THE PARTNERSHIPS AND UNINCORPORATED ASSOCIATIONS IDENTIFIED ON SCHEDULE "A,"** | |
| *Defendants*. | |

## PLAINTIFFS' ORIGINAL COMPLAINT

Plaintiffs David Yurman Enterprises LLC and David Yurman IP LLC (collectively, "David Yurman" or "Plaintiffs"), by and through their counsel, Baker McKenzie, hereby bring this Original Complaint against the Partnerships and Unincorporated Associations identified on Schedule A attached hereto (collectively, "Defendants") and hereby allege as follows:

### I.      PARTIES

1.      Plaintiff David Yurman Enterprises LLC is a limited liability company organized and existing under the laws of the State of Delaware with a principal place of business at 24 Vestry Street, New York, New York 10013.

2.      Plaintiff David Yurman IP LLC is a limited liability company organized and existing under the laws of the State of Delaware with a principal place of business at 24 Vestry Street, New York, New York 10013. David Yurman IP LLC owns all right, title and interest in and to the David Yurman mark and name for use in connection with a wide range of goods and services.

1

3.      Upon information and belief, Defendants are individuals and business entities who primarily reside in the People's Republic of China or other foreign jurisdictions. Defendants conduct business throughout the United States, including within the State of Illinois and this Judicial District, through the operation of fully interactive, commercial websites and online marketplaces listed in Schedule A. Each Defendant targets the United States, including Illinois, and has offered to sell, and on information and belief, has sold and continues to sell counterfeit David Yurman products to consumers within the United States, including the State of Illinois.

4.      On information and belief, many of the Defendants are an interrelated group of counterfeiters working in active concert to knowingly and willfully manufacture, import, distribute, offer for sale, and sell products and to provide retail and store services using counterfeit versions of the David Yurman trademarks in the same transaction, occurrence, or series of transactions or occurrences.

5.      Defendants' true identities are currently unknown because Defendants, in perpetrating their illegal and unauthorized actions, have intentionally hidden their identities and the full scope of their counterfeiting operation. In the event that Defendants provide additional credible information regarding their identities, David Yurman will take appropriate steps to amend this Complaint.

## II.      JURISDICTION AND VENUE

6.      This is an action for trademark infringement and counterfeiting. As set forth below, Defendants' unlawful actions constitute federal trademark infringement and counterfeiting under Section 32 of the Lanham Act, 15 U.S.C. §1114, false designation of origin under Section 43(a) of the Lanham Act, 15 U.S.C. §1125(a), and violation of the Illinois Uniform Deceptive Trade Practices Act, 815 ILCS § 510, *et seq*. This Court has original subject matter jurisdiction over the claims in this action pursuant to the provisions of the Lanham Act, 15 U.S.C. §1051, *et*

*seq.*, 28 U.S.C. §1338(a)–(b) and 28 U.S.C. §1331.

7. Pursuant to 28 U.S.C. § 1367(a), this Court has supplemental jurisdiction over the claims that arise under the laws of the State of Illinois because the state law claims are so related to the federal claims that they form part of the same case or controversy and derive from a common nucleus of operative facts.

8. Venue is proper in this district pursuant to 28 U.S.C. §1391, and this Court may exercise personal jurisdiction over Defendants since each of the Defendants directly targets business activities toward consumers in the United States, including Illinois, through at least the fully interactive, commercial Internet stores operating under the Defendants' domain names (such domains, the "Defendant Domain Names") and/or the online marketplaces as defined and identified in Schedule A attached hereto (collectively, the "Online Stores"). Specifically, Defendants are reaching out to do business with Illinois residents by operating one or more Online Stores through which Illinois residents can purchase products using counterfeit versions of David Yurman's trademarks. Upon information and belief, each of the Defendants has targeted Illinois residents by operating Online Stores that offer to sell, sell, accept payment in U.S. dollars, and ship products to the United States, including Illinois, that use counterfeit versions of David Yurman's federally registered trademarks. Each of the Defendants is, thus, committing tortious acts in Illinois, is engaging in interstate commerce, and has wrongfully caused David Yurman substantial injury in the State of Illinois.

### III. FACTUAL BACKGROUND

9. Like many other luxury goods manufacturers, David Yurman has been battling counterfeit goods throughout the globe. In recent years, this problem has increased exponentially with infringements occurring through online marketplaces and websites. This action therefore has been filed by David Yurman to stop the online sale of unauthorized and unlicensed counterfeit

jewelry using David Yurman's federally registered trademarks (the "Counterfeit Products"). The sellers of these Counterfeit Products are trading on David Yurman's goodwill and reputation by offering for sale and/or selling goods bearing David Yurman's federally registered trademarks,

including without limitation DAVID YURMAN, DY, and  .

10.     Upon information and belief, Defendants create the Online Stores and design them to appear to be selling genuine David Yurman branded products, while actually infringing David Yurman's trademarks and selling Counterfeit Products to unknowing consumers. The Online Stores have common features or other identifying elements, such as design elements and similarities of the counterfeit products offered for sale, establishing a logical relationship between them and suggesting that Defendants' counterfeiting operation arises out of the same transaction, occurrence, or series of transactions or occurrences. Further establishing a logical relationship between the Defendants is the existence of webpages such as sellerdefense.cn, which allow counterfeiters to coordinate and communicate with each other regarding brands which have filed anti-counterfeiting actions and how to avoid counterfeiting suits, among other topics. Defendants further attempt to avoid liability by going to great lengths to conceal both their identities and the full scope and interworking of their counterfeiting operation. Defendants have and continue to willfully and maliciously advertise, offer for sale, and sell David Yurman counterfeits.

11.     David Yurman is forced to file this action to combat Defendants' counterfeiting of its registered trademarks, as well as to protect unknowing consumers from purchasing Counterfeit Products over the Internet. David Yurman has been and continues to be irreparably damaged through consumer confusion, dilution, and tarnishment of its valuable trademarks as a result of Defendants' actions and seeks injunctive and monetary relief.

12.     In particular, David Yurman is a world-famous luxury jewelry and timepiece

brand which designs, manufactures and distributes jewelry and timepieces worldwide. David Yurman was founded in New York in 1980. Since that time, David Yurman's offerings have expanded to include high jewelry collections, men's and women's fine jewelry, and luxury timepieces. Today, David Yurman operates 49 David Yurman boutique locations across the US, France, Hong Kong and Canada.

13. David Yurman's jewelry was born out of the design of its signature cable bracelet made of precious metal and adorned with a variety of colorful gemstones. This design continues to be a cornerstone of David Yurman's product offerings.

14. David Yurman's timeless designs are recognized worldwide by the trademarks DAVID YURMAN, DY, or  . In fact, David Yurman products always include at least one of David Yurman's federally registered trademarks.

15. David Yurman has been using the DAVID YURMAN and DAVID YURMAN-formative trademarks in commerce on and in connection with jewelry and related products continuously and consistently for decades. Since at least as early as 1992, David Yurman has prominently and extensively marketed, advertised, and promoted its DAVID YURMAN luxury jewelry throughout the United States.

16. David Yurman is the owner of the following federal trademark registrations, among others (collectively the "DAVID YURMAN Trademarks"):

| Trademark | Registration No. | Goods and Services |
|---|---|---|
|  | 5779133 | Jewelry; watches; Retail store services featuring jewelry and watches. |
| DAVID YURMAN | 5710678 | Candles |

| | | |
|---|---|---|
| DAVID YURMAN | 5374031 | Cake cutters; pencils; pens; writing instruments; picture frames of precious metal; bottle openers; cake servers; corkscrews; shot glasses; cigarette lighters of precious metal |
| DY | 5359707 | Cake cutters; bottle openers; cake servers; corkscrews; shot glasses; cigarette lighters of precious metal |
|  | 4931711 | Clasps for jewelry; jewelry; jewelry made in whole or significant part of precious metals, diamonds and gemstones, and semi-precious gemstones, namely, gold, silver, and platinum, diamonds, topaz, amethyst, black onyx |
| D.Y. | 4581870 | Christmas tree ornaments and decorations |
|  | 4561517 | Christmas tree ornaments and decorations |
| DAVID YURMAN MIDNIGHT MELANGE | 4139196 | Jewelry |
| DAVID YURMAN MOSAIC PAVE | 4672164 | Jewelry |
| DAVID YURMAN REVOLUTION | 4564694 | Watches |
| DY | 3924043 | Jewelry |

| | | |
|---|---|---|
| DAVID YURMAN THE SIGNATURE OF TIME | 2798900 | Fine watches |
| DAVID YURMAN | 2460107 | Retail store services for jewelry, watches, related accessories |
| DAVID YURMAN | 1725487 | Precious metal jewelry |
| DAVID YURMAN | 2014167 | Watches |
| CABLESPIRA | 4539224 | Jewelry |
| D.Y. | 1568254 | Jewelry |
| DY | 5779132 | Jewelry; watches; retail store services featuring jewelry and watches |
|  | 3282245 | Fine jewelry and watches |
|  | 4655095 | Jewelry; bracelets |
|  | 5025164 | Jewelry; bracelets |
| ALBION | 4756697 | Watches and timepieces |
| ALBION | 2959204 | Fine jewelry and precious stones |
| **Trademark** | **Registration No.** | **Goods and Services** |
| BELMONT | 5286364 | Alloys of precious metal; bangles, bracelets; bracelets of precious metal; diamonds; earrings; gemstone jewelry; gold; jewellery chain ofprecious metal for bracelets; jewellery chains; jewelry; jewelry chains; necklace and |

| Trademark | Registration No. | Goods and Services |
|---|---|---|
| | | earring combinations that can be worn separately or as one piece; necklaces; pendants; pierced earrings; precious and semi-precious gems; precious gemstones; precious metals and their alloys; processed or semi-processed precious metals; rings; semi-precious stones; silver; women's jewelry |
| BELMONT | 3060653 | Watches and precious stones |
| CABLE BUCKLE COLLECTION | 3800477 | jewelry |
| CABLE CLASSICS COLLECTION | 3687241 | jewelry |
| CABLE COLLECTIBLES | 3685701 | jewelry |
| CHATELAINE | 3628598 | jewelry |
| CONTINUANCE | 5238342 | Jewellery and precious stones, jewellery made of precious metals; bracelets of precious metal; earrings; necklaces; pendants; rings being jewelry; rings made in whole or significant part of precious metal |
| **Trademark** | **Registration No.** | **Goods and Services** |
| DY CROSSOVER | 4269147 | Jewelry, namely rings, earrings, bracelets, pendants, precious stones, and precious metals |
| DY MADISON | 4258667 | jewelry |
| QUATREFOIL | 2918700 | Fine jewelry and precious stones |
| STREAMLINE | 3991241 | jewelry |

| | | |
|---|---|---|
| THE THOROUGHBRED COLLECTION | 2010326 | Fine jewelry in gold, platinum and silver, namely, bracelets, rings, earrings, brooches, necklaces, pendants, pins and watches |
| UNITY | 4663977 | Jewelry and watches |
| VENETIAN QUATREFOIL COLLECTION | 4701168 | Fine jewelry and precious stones |
| WHEATON | 3628543 | jewelry |
| CABLE CANDY | 3349946 | Fine jewelry, precious stones and watches |
| PURE FORM | 5199831 | Jewellery made of precious metals; bracelets made of precious metal in whole or in part; bracelets of precious metal; jewellery made of precious metals; necklaces made of precious metal in whole or in part; ornaments of precious metal in the nature of jewelry; rings; rings being jewelry; women's jewelry |
| PETRVS | 3450264 | Fine jewelry |
| MARITIME | 4162621 | jewelry |

17.    The above-listed registrations for the DAVID YURMAN Trademarks are valid, subsisting, and in full force and effect. Moreover, many are incontestable pursuant to 15 U.S.C. § 1065, and serve as *prima facie* evidence of the validity of the registrations, David Yurman's ownership of the DAVID YURMAN Trademarks, and of David Yurman's exclusive right to use the DAVID YURMAN Trademarks in commerce on or in connection with all of the goods identified in the registrations pursuant to 15 U.S.C. § 1057(b) and § 1115(a). Furthermore, the registrations are constructive notice of David Yurman's claim of ownership of the DAVID YURMAN Trademarks pursuant to 15 U.S.C. § 1072. True and correct copies of the United States

Registration Certificates for the above-listed DAVID YURMAN Trademarks are attached hereto as **Exhibit 1.**

18.     The DAVID YURMAN Trademarks are exclusive to David Yurman and are displayed extensively on or in close connection with David Yurman products, David Yurman packaging, and in David Yurman's marketing and promotional materials. David Yurman products have long been popular around the world and have been extensively promoted at significant annual expense. David Yurman products have also been the subject of extensive unsolicited publicity resulting from their high-quality, innovative designs and renown as desired luxury items. David Yurman products have been featured in leading publications and newspapers such as *InStyle*, *Harper's Bazaar*, *Elle*, *Vanity Fair*, *GQ*, *Men's Health*, *Architectural Digest, W Magazine, Boston Common*, *Esquire*, and *The New York Times*. Because of these and other factors, the David Yurman brand and the DAVID YURMAN Trademarks have become famous throughout the United States.

19.     To maintain the prestige of the David Yurman brand and DAVID YURMAN Trademarks and to ensure that consumers receive the type of service commensurate with David Yurman's reputation for luxury and quality products, David Yurman authorizes its jewelry to be sold exclusively through David Yurman boutiques or David Yurman's network of authorized retailers around the world, as well as online at https://www.davidyurman.com/.

20.     David Yurman operates social media accounts to promote and advertise its products, including Instagram, Facebook, Pinterest, Twitter, YouTube, and WeChat. David Yurman's primary Instagram account, @davidyurman, has over 370,000 followers. Further, the David Yurman Facebook page boasts over 635,000 likes and over 625,000 followers. The recognition of the David Yurman brand and DAVID YURMAN Trademarks among the public at large is enhanced not only by David Yurman's own extensive advertising efforts and select

distribution, but also by fashion editorials and press coverage of David Yurman, as well as the coverage of David Yurman on social media platforms by influencers, celebrities and jewelry aficionados. Such press coverage reaches millions of consumers.

21.     As the result of David Yurman's exclusive and extensive use of the DAVID YURMAN Trademarks, David Yurman is recognized as the source of any products bearing one or more of the DAVID YURMAN Trademarks. Due to the worldwide public acceptance, overwhelming fame, and great recognition of products bearing or sold under the DAVID YURMAN Trademarks, these trademarks have come to represent an enormous amount of goodwill for David Yurman and have caused goods bearing the DAVID YURMAN Trademarks—even unauthorized goods—to be in great demand.

22.     David Yurman, however, has gone to great lengths to protect its name and enforce the DAVID YURMAN Trademarks. David Yurman actively seeks to protect and enforce its intellectual property rights by working with industry associations, anti-counterfeiting organizations, private investigators, and law enforcement authorities, including customs authorities in the United States and internationally. Through those efforts, David Yurman has discovered hundreds, if not thousands, of counterfeit products being sold at physical locations and, more recently, over the Internet. Indeed, David Yurman has seen unauthorized use of one or more of the DAVID YURMAN Trademarks rise dramatically through the proliferation of online stores and marketplace listings on platforms such as eBay, AliExpress, Amazon and other such platforms, as listed on Schedule A.

23.     Commercial Internet stores, like the Defendants' Online Stores, are estimated to receive tens of millions of visits per year and to generate over $135 billion in annual online sales. Internet websites like the Defendants' Online Stores are also estimated to annually contribute to

tens of thousands of lost jobs for legitimate businesses and broader economic damages such as lost tax revenue.

24.     Here, Defendants facilitate sales by designing the Online Stores so that they appear to unknowing consumers to be authorized online retailers, outlet stores, or wholesalers. Specifically, the Online Stores operated by Defendants use one or more of the DAVID YURMAN Trademarks without authorization on or in connection with the sales of products that are not genuine David Yurman products. For example, the Defendants use the trademarks DAVID YURMAN, DY, or ⬭ for the purpose of confusing consumers into believing that they are purchasing a genuine David Yurman product. Defendants' Online Stores also appear legitimate and accept payment in, among others, U.S. dollars via major credit cards, Alipay, Western Union, Moneygram, T/T, and PayPal.  Defendants further perpetuate the illusion of legitimacy by offering customer service and using indicia of authenticity and security that consumers have come to associate with authorized retailers, including the Visa®, MasterCard®, Discover®, and/or PayPal® logos. To be clear, David Yurman has not licensed or authorized Defendants to use any of the DAVID YURMAN Trademarks, and none of the Defendants are authorized retailers of genuine David Yurman products. Thus, Defendants are using trademarks owned by David Yurman without authorization and creating confusion about the source of the counterfeit products being sold through the Online Stores.

25.     Many of the Defendants also deceive unknowing consumers by using the DAVID YURMAN Trademarks without authorization within the content, text, and/or meta tags of their websites and online marketplaces in order to attract various search engines crawling the Internet looking for sites relevant to consumer searches for David Yurman products. Additionally, upon information and belief, Defendants use other unauthorized search engine optimization (SEO)

tactics and social media spamming so that the Online Stores listings show up at or near the top of relevant search results and misdirect consumers searching for genuine David Yurman products. Other Defendants only show the David Yurman products in product images while using strategic item titles and descriptions that will trigger their listings when consumers are searching for David Yurman products.

26. As further evidence of their illegal activity, Defendants go to great lengths to conceal their identities and often use multiple fictitious names and addresses to register and operate their network of Online Stores. On information and belief, Defendants regularly create new websites and online marketplace accounts on various platforms using the identities listed in Schedule A to the Complaint, as well as other unknown fictitious names. Such registration patterns are one of many common tactics used by the Defendants to conceal their identities and the full scope and interworking of their counterfeiting operation, and to avoid being shut down.

27. Even though Defendants operate under multiple fictitious names, there are numerous similarities among the Online Stores operated by the Defendants reflecting that they are interrelated, and that their counterfeiting activity arises from the same set of transactions or occurrences. For example, counterfeit products for sale on the Online Stores bear similar irregularities and indicia of being counterfeit to one another, suggesting that the counterfeit products were manufactured by and come from a common source and that some of the Defendants are interrelated. For example, the defendants listed at lines 43, 44, 45, 60, and 74, among others, maintain Online Stores that are identical to one another, using the same pictures, payment methods, and language describing the goods sold and terms and conditions related to the same. The same is true for the other Defendants in that they use the same or very similar pictures to advertise the same types of counterfeit goods, accept payment through the same channels, and represent

themselves to be located in the same areas. Further, the Online Stores also include other notable common features, including use of the same shopping cart platforms, check-out methods, lack of contact information, identically or similarly priced items, the same incorrect grammar and misspellings, similar hosting services, and the use of the same text and images, including content copied from David Yurman's official website, https://www.davidyurman.com/. Indeed, in view of these undeniable similarities across the Defendants, it is likely that the majority of them share the same owner. Moreover, it is known that these counterfeiters conspire and communicate together to avoid detection and being named in an enforcement action. For example, through websites, such as sellerdefense.cn, these counterfeiters constantly monitor U.S. lawsuits and communicate with one other about how to sell counterfeit products without detection, as well as how to transfer funds beyond a U.S. court's jurisdiction once they become aware that a lawsuit has been filed. Thus, because this action presents common questions of law and fact, and because, at a minimum, Plaintiffs' claims for relief arise from the same series of transactions or occurrences, it is entirely appropriate to join these Defendants in the same lawsuit. To do otherwise, would permit the Defendants to likely avoid suit altogether, given their interrelated nature, and frustrate Plaintiffs' attempts to enforce their intellectual property rights.

28.     In addition to operating under multiple fictitious names, Defendants in this case and defendants in other similar cases against online counterfeiters use a variety of other common tactics to evade enforcement efforts. For example, counterfeiters like Defendants will often register new websites and online marketplace accounts under new aliases once they receive notice of a lawsuit. Counterfeiters also typically ship products in small quantities via international mail to minimize detection by U.S. Customs and Border Protection.

29.     Further, counterfeiters such as Defendants typically operate multiple credit card

merchant accounts and PayPal accounts behind layers of payment gateways so that they can continue operation in spite of enforcement efforts by brand owners. On information and belief, Defendants maintain off-shore bank accounts and regularly move funds from their PayPal accounts or other financial accounts to off-shore bank accounts outside the jurisdiction of this Court.

30.     Defendants, without any authorization or license from David Yurman, have knowingly and willfully used and continue to use the DAVID YURMAN Trademarks in connection with the advertisement, distribution, offering for sale, and sale of Counterfeit Products into the United States and Illinois over the Internet. Each Defendant Online Store offers shipping to the United States, including Illinois, and, on information and belief, each Defendant has sold counterfeit products into the United States, including Illinois.

31.     Defendants' use of the DAVID YURMAN Trademarks in connection with the advertising, distribution, offering for sale, and sale of counterfeit David Yurman products, including the sale of counterfeit David Yurman products into the United States, including Illinois, is likely to cause and has caused confusion, mistake, and deception by and among consumers and is irreparably harming David Yurman.

## IV.    CAUSES OF ACTION
### COUNT ONE – TRADEMARK INFRINGEMENT (15 U.S.C. §1114)

32.     David Yurman incorporates by reference paragraphs 1 through 31 as if fully set forth herein.

33.     David Yurman is the exclusive owner of the DAVID YURMAN Trademarks. David Yurman's federal registrations are active, valid, and in full force and effect.

34.     Defendants, without David Yurman's authorization, have used and continue to use in commerce counterfeit imitations of the federally registered DAVID YURMAN Trademarks in connection with the sale, offering for sale, distribution, and/or advertising of counterfeit jewelry

bearing one or more of the DAVID YURMAN Trademarks.

35. Defendants' infringing activities are likely to cause and actually are causing confusion, mistake, or deception among customers, potential customers, and/or the public as to the origin, sponsorship, or approval of the Counterfeit Products. Consumers are likely to be misled into believing that the Online Stores and sale of products bearing the DAVID YURMAN Trademarks are licensed, sponsored, or otherwise approved by David Yurman.

36. Upon information and belief, Defendants were on both actual and constructive notice of David Yurman's exclusive rights in the registered DAVID YURMAN Trademarks when they adopted the DAVID YURMAN Trademarks for use in advertising and marketing in their Online Stores, which offer for sale and sell infringing and counterfeit products that exactly or very closely copy those sold by David Yurman under the DAVID YURMAN Trademarks. Defendants' actions are designed to trade on the DAVID YURMAN Trademarks.

37. Defendants' unauthorized use of the DAVID YURMAN Trademarks is willful, in bad faith, and with full knowledge of David Yurman's prior use of, exclusive rights in, and ownership of the DAVID YURMAN Trademarks, with full knowledge of the goodwill and reputation associated with the DAVID YURMAN Trademarks, and with full knowledge that Defendants have no right, license, or authority to use the DAVID YURMAN Trademarks or any other mark confusingly similar thereto. The knowing and intentional nature of the acts set forth herein renders this an exceptional case under 15 U.S.C. §1117(a).

38. Defendants' acts are intended to reap the benefit of the goodwill that David Yurman has created in the DAVID YURMAN Trademarks and constitute trademark infringement in violation of Section 32 of the Lanham Act, 15 U.S.C. §1114(1).

39. As a result of Defendants' conduct and infringement of the DAVID YURMAN

Trademarks, David Yurman is entitled to recover actual and/or statutory damages to the maximum amount permitted by law or in equity, including under 15 U.S.C. § 1117.

40.     Defendants' conduct has caused and is causing immediate and irreparable injury to David Yurman and will continue both to damage David Yurman and deceive the public unless enjoined by this Court. David Yurman has no adequate remedy at law for ongoing infringement.

## COUNT TWO – TRADEMARK COUNTERFEITING (15 U.S.C. §1114)

41.     David Yurman incorporates by reference paragraphs 1 through 40 as if fully set forth herein.

42.     This is an action for trademark counterfeiting against Defendants based on its promotion, advertisement, distribution, sale and/or offering for sale counterfeit jewelry products bearing one or more of the DAVID YURMAN Trademarks.

43.     Defendants' counterfeiting activities are likely to cause and actually are causing confusion, mistake, and deception among the general consuming public as to the origin and quality of the Counterfeit Products.

44.     Defendants' illegal acts are intended to reap the benefit of the goodwill that David Yurman has created in its DAVID YURMAN Trademarks and constitute counterfeiting of David Yurman's federally registered trademarks in violation of Section 32 of the Lanham Act, 15 U.S.C. §1114.

45.     As a result of Defendants' conduct and infringement of the DAVID YURMAN Trademarks, David Yurman is entitled to recover actual and/or statutory damages to the maximum amount permitted by law or in equity, including under 15 U.S.C. § 1117.

46.     Defendants' conduct has caused and is causing immediate and irreparable injury to David Yurman and will continue to both damage David Yurman and deceive the public unless enjoined by this Court. David Yurman has no adequate remedy at law for ongoing infringement.

**COUNT THREE – FALSE DESIGNATION OF ORIGIN (15 U.S.C. §1125(A))**

47.     David Yurman incorporates by reference paragraphs 1 through 46 as if fully set forth herein.

48.     Upon information and belief, Defendants' promotion, marketing, offering for sale, and sale of Counterfeit Products has created and is creating a likelihood of confusion, mistake, and deception among the general public as to the affiliation, connection, or association with David Yurman or the origin, sponsorship, or approval of Defendants' Counterfeit Products by David Yurman.

49.     By using the DAVID YURMAN Trademarks on or in close connection with the Counterfeit Products, Defendants create a false designation of origin and a misleading representation of fact as to the origin and sponsorship of the Counterfeit Products.

50.     Defendants' false designation of origin and misrepresentation of fact as to the origin and/or sponsorship of the Counterfeit Products to the general public involves the use of counterfeit marks and is a willful violation of Section 43 of the Lanham Act, 15 U.S.C. §1125.

51.     As a result of Defendants' conduct, including the violation of Section 43 of the Lanham Act, 15 U.S.C. § 1125, David Yurman is entitled to recover actual and/or statutory damages to the maximum amount permitted by law or in equity.

52.     Defendants' conduct has caused and is causing immediate and irreparable injury to David Yurman and will continue to both damage David Yurman and deceive the public unless enjoined by this Court. David Yurman has no adequate remedy at law for ongoing infringement.

**COUNT FOUR – VIOLATION OF ILLINOIS UNIFORM DECEPTIVE TRADE
PRACTICES ACT (815 ILCS §510, et seq.)**

53.     David Yurman incorporates by reference paragraphs 1 through 52 as if fully set forth herein.

54.     Defendants have knowingly and willfully engaged in deceptive trade practices violating Illinois law by passing off the Counterfeit Products as those of David Yurman, causing a likelihood of confusion and/or misunderstanding as to the source of their goods or services, causing a likelihood of confusion and/or misunderstanding as to an affiliation, connection, or association with genuine David Yurman products, using deceptive representations or designations of origin in connection with David Yurman products, and engaging in other deceptive conduct which creates a likelihood of confusion or misunderstanding among the public.

55.     Defendants' infringing acts constitute a willful violation of the Illinois Uniform Deceptive Trade Practices Act, 815 ILCS § 510, et seq.

56.     As a result of Defendants' conduct, including the violation of the Illinois Uniform Deceptive Trade Practices Act, David Yurman is entitled to recover actual and/or statutory damages to the maximum amount permitted by law or in equity.

57.     Defendants' conduct has caused and is causing immediate and irreparable injury to David Yurman and will continue to both damage David Yurman and deceive the public unless enjoined by this Court. David Yurman has no adequate remedy at law for ongoing infringement.

## V.      JURY DEMAND

58.     Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, David Yurman demands a trial by jury of all issues so triable.

## VI.      PRAYER FOR RELIEF

WHEREFORE, David Yurman prays for relief as follows:

1)      That Defendants, their affiliates, officers, agents, servants, employees, attorneys, confederates, and all persons acting for, with, by, through, under, or in active concert with them be temporarily, preliminarily, and permanently enjoined and restrained from:

a.      using the DAVID YURMAN Trademarks or any reproductions, counterfeit copies, or colorable imitations thereof in any manner in connection with the distribution, marketing, advertising, offering for sale, or sale of any product that is not a genuine David Yurman product or is not authorized by David Yurman to be sold in connection with the DAVID YURMAN Trademarks;

b.      passing off, inducing, or enabling others to sell or pass off (i) any product as a genuine David Yurman product or (ii) any other service or product produced by David Yurman that is not David Yurman's or is not produced under the authorization, control, or supervision of David Yurman and, in either case, approved by David Yurman for sale under the DAVID YURMAN Trademarks;

c.      committing any acts calculated to cause consumers to believe that Defendants' Counterfeit Products are those sold or provided under the authorization, control, or supervision of David Yurman, or are sponsored by, approved by, or otherwise connected with David Yurman;

d.      further infringing the DAVID YURMAN Trademarks; and

e.      manufacturing, shipping, delivering, holding for sale, transferring or otherwise moving, storing, distributing, returning, or otherwise disposing of, in any manner, products or inventory not manufactured by or for David Yurman, nor authorized by David Yurman to be sold or offered for sale, and which bear any of David Yurman's trademarks, including the DAVID YURMAN Trademarks, or any reproductions, counterfeit copies, or colorable imitations thereof;

2)   Entry of an Order that, upon David Yurman's choosing, the registrant of the Defendant Domain Names shall be changed from the current registrant to David Yurman or its designee, and that the domain name registries for the Defendant Domain Names shall unlock and change the registrar of record for the Defendant Domain Names to a registrar of David Yurman's selection, and that the domain name registrars, including, but not limited to, GoDaddy Operating Company, LLC ("GoDaddy"), RU-CENTER-RU ("RU- Center"), and Fabulous.com Pty Ltd. ("Fabulous"), shall take any steps necessary to transfer the Defendant Domain Names to a registrar account of David Yurman's selection; or that the same domain name registries shall disable the Defendant Domain Names and make them inactive and non-transferable;

3)   Entry of an Order that, upon David Yurman's request, those in privity with Defendants and those with notice of the injunction, including, without limitation, any online marketplace platforms such as eBay, Amazon, AliExpress, and Amazon web hosts, sponsored search engine or ad-word providers, credit cards, banks, merchant account providers, third party processors and other payment processing service providers, such as PayPal, and Internet search engines such as Google, Bing and Yahoo (collectively, the "Third Party Providers") shall:

   a.   disable and cease providing services being used by Defendants, currently or in the future, to engage in the sale of goods using the DAVID YURMAN Trademarks; and

   b.   disable and cease displaying any advertisements used by or associated with Defendants in connection with the sale of counterfeit and infringing goods

using the DAVID YURMAN Trademarks.

4)      That Defendants account for and pay to David Yurman all profits realized by Defendants by reason of Defendants' unlawful acts herein alleged, and that the amount of damages for infringement of the DAVID YURMAN Trademarks be increased by a sum not exceeding three times the amount thereof as provided by 15 U.S.C. §1117;

5)      In the alternative, that David Yurman be awarded statutory damages for willful trademark counterfeiting pursuant to 15 U.S.C. §1117(c)(2) of $2,000,000 for each and every use of the DAVID YURMAN Trademarks;

6)      That David Yurman be awarded its reasonable attorneys' fees and costs; and

7)      Award any and all other legal or equitable relief that this Court deems just and proper.

Dated: December 3, 2020

*Shima S. Roy*
**Shima S. Roy**
shima.roy@bakermckenzie.com
**BAKER McKENZIE**
300 East Randolph Street, Suite 5000
Chicago, Illinois 60601
Telephone:  312-861-8000
Facsimile:  312-861-2899

**W. Bart Rankin** *(pro hac vice* pending)
w.rankin@bakermckenzie.com
**BAKER McKENZIE**
1900 North Pearl Street, Suite 1500
Dallas, Texas, 75201
Telephone:  214-978-3000
Facsmile:   214-978-3099

ATTORNEYS FOR DAVID YURMAN
ENTERPRISES, LLC AND DAVID
YURMAN IP LLC